## SEDGLEY *vs.* *The inhabitants of* BOWDOINHAM.

By the terms of an act dividing the town of B. and incorporating a part of it as the town of R. the latter was required to support their proportion of all paupers then belonging to said town of B. which it was agreed was 5–13ths. By a second act, the legislature undertook to change the proportions of expense between said towns, relieving the new town from much of its liability as established by the act of incorporation. After the passage of the last, and prior to any judicial construction of it, J. S. contracted with the town of B. to support *the poor of said town* for one year, he having *all the income and benefit* belonging to them during said term. And he accordingly supported them, including the 5–13ths belonging to the town of R. according to the first act, and received the sum stipulated in the contract. Afterward the second act was decided to be unconstitutional, and the town of B. in a suit brought for that purpose, recovered of the town of R. 5–13ths of the expense for supporting the poor during the year of J. S's. contract. The Court *held,* that J. S. was not entitled, by the terms of his contract, to the sum thus recovered by the town of B.

THIS was an action of *assumpsit* for money had and received, and came to this Court on exceptions filed to the opinion of *Whitman C. J.* in the Court of Common Pleas. On the trial in the Court below, the plaintiff read in evidence a bond dated *March* 7, 1825, given by him to the defendants, a part of the condition of which was as follows : " The condition of this ob-" ligation is such, that whereas the said *Robert Sedgley* has " taken the paupers of the said town to support for *one year* " from the 7th day of *May* next, for the sum of three hundred " and forty-seven dollars, — and he is to have all the *income* " *and benefit* that belongs to said poor for the term of said year, " — and he is to indemnify the town of *all kind of pauper ex-* " *penses* whatever for said year," &c.

It further appeared in evidence, that in *Feb.* 1823, there was a division of the town of *Bowdoinham* by legislative enactment, and a part thereof was incorporated by the name of *Richmond;* — one of the provisions of the act of incorporation being, that *Richmond* should maintain its relative proportion of the paupers then supported by *Bowdoinham,* which was admitted to be *five thirteenths.*

*Feb.* 15, 1825, an additional act was passed by the legisla-

ture, after notice to the town of *Bowdoinham*, materially changing the proportion of liability as established in the act aforesaid, lessening that of *Richmond*.

At the *May* term, 1828, of the Court of Common Pleas, *Bowdoinham* commenced an action against *Richmond*, to recover the latter's proportion of expense for supporting the paupers aforesaid, during the years of 1825 and 1826, as established by the first act. This suit was contested by *Richmond*, but unsuccessfully, and *Bowdoinham* recovered the amount claimed.

It was agreed that all the paupers of *Bowdoinham*, including the above *five thirteenths*, were supported by the plaintiff during the year 1825; and that the defendants had paid him the sum named in the bond, to wit, $347, refusing to pay him the sum received of the town of *Richmond* as aforesaid, by way of reimbursement, for supporting said *five thirteenths* in 1825. — And for the recovery of this sum, the present suit was instituted.

Upon the foregoing facts *Whitman C. J.*, in the Court below, was of opinion that the action was not maintainable, and directed a nonsuit, to which opinion exceptions were filed and allowed.

*Allen*, for the plaintiff, argued that a reasonable construction of the bond would have required the plaintiff to support only the paupers belonging to *Bowdoinham*, not those belonging to *Richmond*, the language being, " having taken *the pau-* "*pers of the said town.*" But that if the construction should be otherwise, still the plaintiff is entitled to recover the amount received by the defendants of *Richmond*, under the provision of the bond which gives to him, " *all the income and benefit* " that belongs to said poor for the term of said year."

In regard to the construction of the contract he argued further, that it was manifest the plaintiff was to *take the place of Bowdoinham* for that year in reference to the poor. He was to indemnify the town from all pauper expenses, and was to have all the advantages belonging to the town. The sum therefore recovered by the defendants of *Richmond*, for the

Sedgley *v.* Bowdoinham.

expense incurred by the plaintiff in supporting the poor of *Richmond*, should be considered as recovered for the plaintiff's use. Such an effect may reasonably be supposed to have been contemplated by the parties. By the first statute *Richmond* was liable to 5–13ths — these, *Richmond* might take *numerically*, or such as would be *equal* to 5–13ths — it was probable that they would do one or the other, and this would be fairly anticipated by both the parties. If *Richmond* had *then* taken *home* 5–13ths (which they would have done but for the law of 1825,) no question would have arisen ; — the plaintiff would have been relieved from their support and *Richmond* would have borne it, but *Bowdoinham* would have gained nothing by the transfer. *Bowdoinham* would then as now have paid $347. *Richmond* would have supported 5–13ths and the plaintiff 8–13ths, the latter deriving the sole benefit of the transfer.

The defendants' construction of the contract is attended with this absurd consequence. If *Richmond* take their share of the paupers and support them at home, the plaintiff is relieved. If they support them in *Bowdoinham*, they pay for their support, not however to him who would be relieved if they supported their poor at home, but to *Bowdoinham* who has incurred *no additional* expense by reason of the paupers being kept in that town.

Again, suppose *Richmond* had taken home their 5–13ths, would *Bowdoinham* have had a right of reduction from the $347 which they had agreed to pay the plaintiff? If not, then the plaintiff, who alone has been subjected to increased expense by their not doing so, ought to have the benefit of the sum recovered by *Bowdoinham*.

That *Richmond* would take and support at home their 5–13ths might fairly have been presumed at the time this contract was made, — for the second act, though passed, had not been published, and ultimately proved to be a nullity by the decision of this Court.

But the defendants have expressly assigned to the plaintiff all the remedy they have over against *Richmond*. By the contract the plaintiff is to have " *all the income and benefit that be-*

"*longs to said poor.*" This would include pensions should the paupers be entitled to any, — or claim upon the State had there been any State paupers as formerly, — or claims against other towns if he should discover that any of the paupers had a legal settlement there. Why not then include also the present claim ?

Suppose, on the other hand, an additional number of paupers should have been unexpectedly thrown on *Bowdoinham* during the plaintiff's year, would the defendants have been liable to an increase of the sum of $347 ? Surely not. The rights and remedies then between them, ought to be mutual and reciprocal. *Saco v. Osgood, 5 Greenl.* 237.

*Bowman,* for the defendants.

What was the effect of the first statute and the settlement under it, between *Bowdoinham* and *Richmond* ? Until the paupers belonging to *Richmond* had been removed there, they must be considered as belonging to *Bowdoinham.* This was the case at the time the contract between these parties was entered into. The paupers being thus fixed there, the plain and obvious terms of the contract, required the plaintiff to support them.

But further, by the last act, the liability of supporting these paupers, was transferred to *Bowdoinham.* At the time of the making the contract, the parties must have known of the passage of this act, and must have contracted in reference to it. If the law was constitutional, the plaintiff must have well understood that he was bound to support all the paupers. If supposed to be unconstitutional, would he have bought a lawsuit without making any allusion to it in any way in the contract ?

The unconstitutionality of that act has been established, but that decision can have no effect upon the contract between these parties. — It settles the rights and obligations of the *two towns* as to this matter alone.

The argument on the other side drawn from the absurd consequences which would result from our construction of the contract, in case of a removal of the paupers from *Bowdoinham* by *Richmond,* may be answered by denying the right of *Rich-*

*mond* to cause any such removal — the supposed case therefore can never exist. *Bowdoinham* is to support the paupers, and *Richmond* is to pay 5–13ths of the expense.

He argued further that the "*income and benefit*" spoken of in the bond, related merely to the *labour*, &c. of the paupers, and not to any such case as the claim presented in this action.

·The opinion of the Court was·delivered, as drawn.up by

MELLEN C. J. — By the 5th section of the act of *February* 10th, 1823, incorporating the town of *Richmond*, formerly a part of the town of *Bowdoinham*, it is enacted " that the said town of " *Richmond* shall be held to support their proportion of all pau-" pers, now supported, in whole or·in part, by *Bowdoinham*." The section then directs how the proportion was to be· ascertained, in obedience to which it was ascertained *Bowdoinham* was to pay *eight* thirteenth parts, and *Richmond five* thirteenth parts of such expense. By the act of *February* 5th, 1825, the Legislature undertook to *change* the proportions of expense, as ascertained under the former act; and to relieve *Richmond* from the liabilities thus existing, and declared that from and after the first day of *May* then next, *Richmond* should be holden to support all paupers who resided, on that day, within the limits of the town of *Richmond*: and that the liabilities and obligations of each of said towns, as to all others who might become chargeable, should remain as though the special provisions of the act of 1823 had never existed. If this last act had produced its intended effect, the liabilities of *Richmond* would have been essentially lessened, it is said, to one quarter part, at most, of the established proportion. But this Court has pronounced the last act unconstitutional, in the case of *Bowdoinham v. Richmond*, 6 *Greenl.* 112. The claim of the plaintiff in this case is resisted on the ground that he by his bond, dated *March* 7, 1825, bound himself to support the *paupers of Bowdoinham* for a certain sum, for one year, being the *same* year, in which he supported them, and for a part of which expense, he has brought this action. It is admitted that the sum mentioned in the condition of said bond, as the agreed compensation, has been paid by the defendants to the plaintiff, so that the only

Sedgley v. Bowdoinham.

question in this cause depends, for its decision, on the construction of the bond. It bears date about one month after the unconstitutional act was passed. When *Richmond* petitioned the Legislature to pass the last act, *Bowdoinham* was duly notified; but gave themselves no concern about it. *Sedgley* is one of the inhabitants of *Bowdoinham*. Such being the facts, both parties must be considered as having knowledge of the passage of the last act; but they could have had no knowledge that its provisions were unconstitutional, for that was not decided until 1830. What, then, must be considered to be the law, in reference to which, the condition of the bond was made, and the parties to the bond acted in making their contract? We think they must be deemed to have made their contract, in reference to the last act, and the state of the respective liabilities of the two towns, in relation to the support of paupers, as established by that act. The plaintiff by his bond engaged to support, for one year, *the paupers of the said town* for \$347; but he was to have the *income* and *benefit* that belonged to said poor for the term of one year, and was to indemnify the town from all kind of *pauper expenses whatever* for said year. What is the true meaning of *income* and *benefit* belonging to said poor, as used in the foregoing sentence? We apprehend, they mean the benefit of their labour and assistance during the year. At any rate, it can never be construed to mean any portion of the money received by *Bowdoinham* of *Richmond*, which is claimed in this action, as has been contended by the plaintiff's counsel; for such money is not *a benefit belonging to any of the paupers*, but to the town of *Bowdoinham*. By the bond, the plaintiff agreed to support *the paupers of that town* for one year, for a certain sum; which means *all* their paupers, according to the last act, in reference to which he contracted; that sum he has received and is not entitled to demand any more. The action cannot be maintained. The exceptions are therefore overruled.

*Judgment for defendants.*